#24503-a-SLZ

**2007 SD 113**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BYRON WOODRUFF,                           Petitioner and Appellant,

    v.

BOARD OF COMMISSIONERS FOR
HAND COUNTY, SOUTH DAKOTA,
PHIL TESTERMAN, RON CAMPBELL,
RICH STRASBURG, LARRY ROWEN,
and DELMAR FAWCETT,                        Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
HAND COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON R. ERICKSON
Judge

* * * *

JAMES G. ABOUREZK of
Abourezk Law Offices, PC             Attorneys for petitioner
Sioux Falls, South Dakota            and appellant.

JAMES H. JONES
Hand County State's Attorney         Attorney for respondents
Miller, South Dakota                 and appellees.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2007

OPINION FILED **10/31/07**

#24503

ZINTER, Justice

[¶1.]        Byron Woodruff sought a writ of mandamus to require Hand County to enforce a zoning ordinance and prohibit the construction of a "hog barn" located near his residence.  The circuit court denied mandamus relief.  We affirm.

[¶2.]        Stan and Mike Kopfmann obtained a Hand County building permit to construct the hog barn for 960 animal units.  Woodruff, who resided 1.8 miles away, requested the County to stop the construction.  Woodruff alleged the hog barn violated a county ordinance that required a two-mile separation between an "animal waste facility" and an occupied residence.  The County denied Woodruff's request.  Woodruff then sought a writ of mandamus in circuit court claiming that the County was required to enforce the ordinance's separation requirement.  Following the circuit court's denial of relief, Woodruff brought this appeal.

[¶3.]        "[A] writ of mandamus is an extraordinary remedy that will issue only when the duty to act is clear[.]"  Baker v. Atkinson, 2001 SD 49, ¶16, 625 NW2d 265, 271.  "It commands the fulfillment of an existing legal duty, but creates no duty itself, and acts upon no doubtful or unsettled right."  Sorrels v. Queen of Peace Hosp., 1998 SD 12, ¶6, 575 NW2d 240, 242.  To prevail, "the petitioner must have a clear legal right to performance of the specific duty sought to be compelled and the respondent must have a definite legal obligation to perform that duty."  Id.  The standard of review for the grant or denial of a writ of mandamus is abuse of discretion.  Schafer v. Deuel County Bd. of Comm'rs, 2006 SD 106, ¶4, 725 NW2d 241, 243.  This case, however, is dependent upon the interpretation of county ordinances.  "The interpretation of an ordinance presents a question of law which

we review de novo." Peters v. Spearfish ETJ Planning Comm'n, 1997 SD 105, ¶5, 567 NW2d 880, 883.

[¶4.]       Two parts of the Hand County zoning ordinance are at issue. The first defines the types of facilities that are covered by the ordinance. The second imposes performance standards, including the separation requirements for those facilities.

[¶5.]       The definition section provides in part:

> Animal Feeding Operation. An animal feeding operation is a facility where more than 1000 animal units are confined at an operation[;] and

> Feedlot Commercial. The feeding of cattle, swine . . . or other livestock, in lots or pens or concentrations of such animals in feeding areas, and such feeding is not done as a subordinate activity to the production of crops[.]

HAND COUNTY, SD, Zoning Ordinance pp 3, 5 (Aug. 1988). The two-mile separation requirement is found in subsection (f) of section 515, which provides:

> **Commercial Feedlot and/or Animal Feeding Operations**:
>
> 1. Performance Standards:
>
>> a. **Animal [F]eeding Operations** shall submit **animal waste management system plan** and specifications . . . to the [Department of Environment and Natural Resources].
>>
>> b. Prior to construction, **such facilities** shall obtain a storm water permit . . . from the DENR.
>>
>> c. **Animal waste facilities** shall be no less than six hundred sixty (660) feet from adjoining domestic ground[.]
>>
>> d. Applicant must present a nutrient management plan[.]
>>
>> e. **Animal waste facilities** shall be located no closer than two (2) miles from any incorporated municipality.

> f. **Animal waste facilities** shall be located no closer than two (2) miles from any occupied residence[.]
>
> g. **Animal waste** shall be transported no more than seven (7) miles from the point of origination for land application.

*Id.* art. 5, §515 (emphasis added).

[¶6.]        The circuit court first concluded that the hog barn fell under the definition of a "feedlot commercial" (commercial feedlot) rather than "animal feeding operation." As indicated in the definitions, in order to be an animal feeding operation, the facility must confine at least 1,000 animal units. *Id.* at p3. Because this hog barn would confine only 960 animal units, the circuit court correctly concluded that the hog barn did not meet the definition of an "animal feeding operation." Instead, it met the definition of a commercial feedlot because it was for the confined feeding of swine and, as the circuit court noted, there was no evidence offered that it would be incidental to a crop growing operation.

[¶7.]        The circuit court then concluded that because the hog barn was a commercial feedlot rather than an animal feeding operation, the separation requirement in subsection (f) did not apply. On appeal, Woodruff argues that subsection (f) does apply. Although he acknowledges that only subsection (a) specifically mentions either feeding operations or commercial feedlots, he contends that remaining subsections, including subsection (f), must apply to commercial feedlots because the heading of section 515 mentions both "Commercial Feedlot and/or Animal Feeding Operations." Woodruff, however, misreads the ordinance.

[¶8.]        First, the heading of the ordinance is irrelevant in this dispute. The ordinance is part of a comprehensive plan for land development in the County.

Article 15, section 1503 of this comprehensive plan, entitled "Purpose of Sub-Titles," specifically provides that the subtitles "are inserted simply for convenience, to serve the purpose of any index and they shall be wholly disregarded by any person, officer, court or other tribunal in construing the terms and provision of this Ordinance." Therefore, the title of section 515 does not determine the scope or application of subsection (f).

[¶9.]     Moreover, the text of subsection (f) does not refer to either commercial feedlots or animal feeding operations. Rather than referring to either of these defined terms, subsection (f) applies to a third term, requiring the two-mile separation from "animal waste facilities." *See id.* art. 5, §515(f). "Animal waste facilities" are not, however, defined or otherwise described in the ordinance. Therefore, to determine whether the separation requirement in subsection (f) applies to this commercial feedlot, we must first examine section 515 in its entirety to determine the meaning of an animal waste facility, and then determine whether an animal waste facility was required for this commercial feedlot.

[¶10.]     In performing that analysis, we note that under subdivision (a), only animal feeding operations are required to submit "animal waste management system plans . . . to the DENR." Subsections (b), (c), (e), and (f) then refer to "such facilities" or "animal waste facilities." We conclude that the "animal waste management systems" mentioned in subsection (a) are "such facilities," i.e., the "animal waste facilities" that the drafters were referring to in those remaining subsections of section 515, including subsection (f).

[¶11.] We reiterate, however, that "animal waste management systems" or "animal waste facilities" are only required for "animal feeding operations." *See* section 515(a). Furthermore, unlike subsection (a), none of the remaining subsections require animal waste management systems or animal waste facilities for commercial feedlots. In fact, the ordinance apparently contemplates commercial feedlots without animal waste facilities because subsection (g) regulates the *removal* of animal waste. We conclude that this ordinance did not require the hog barn to have an animal waste facility; and therefore, the hog barn was not subject to subsection (f)'s separation requirement.

[¶12.] We recognize the potential anomalous result that could occur from the County's separation requirement for animal feeding operations with animal waste facilities, with no separation requirement for commercial feedlots without animal waste facilities. Nevertheless, we are bound by the language of the ordinance, and Woodruff has failed to cite any provision of the ordinance that clearly requires animal waste facilities for commercial feedlots. Absent that showing, Woodruff has failed to show "*a clear legal right to performance of the specific duty* sought to be compelled[.]" Black Hills Cent. R.R. Co. v. City of Hill City, 2003 SD 152, ¶13, 674 NW2d 31, 34.

[¶13.] The circuit court's decision denying mandamus relief is affirmed.

[¶14.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶15.] SABERS, Justice, concurs specially.

SABERS, Justice (concurring specially).

[¶16.]	I agree with the majority opinion that we are bound by the language of the county's ordinance, even if we recognize the "potential anomalous result" that could occur from the county's separation requirement for animal feeding operations with animal waste facilities, but not for commercial feed lots. For the drafters of this ordinance to impose a two-mile separation from a residence to animal feeding operations with animal waste facilities makes sense when that operation exceeds 1,000 animal units.

[¶17.]	For a commercial feedlot with 960 animal units to have <u>no animal waste facilities</u> and consequently, <u>no residential separation requirement</u> makes no sense. Therefore, I write specially to encourage the use of commonsense in drafting commercial feedlot ordinances in the future.