#27977, #27987-aff in pt & rev in pt-GAS
**2017 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NICHOLAS L. and
DONNELLE K. HOFFMAN,                        Applicants and Appellants,

v.

JESSICA VAN WYK, in her
capacity as the Douglas
County Planning and Zoning
Administrator, and THE
DOUGLAS COUNTY PLANNING
AND ZONING COMMISSION,               Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DOUGLAS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIMOTHY W. BJORKMAN
Retired Judge

* * * *

TIMOTHY R. WHALEN
Lake Andes, South Dakota                 Attorney for applicants
                                       and appellants.

JASON W. SHANKS of
May & Johnson, PC
Sioux Falls, South Dakota                Attorneys for respondents and
                                       appellees.

* * * *

CONSIDERED ON BRIEFS
ON MAY 30, 2017
OPINION FILED **08/09/17**

SEVERSON, Justice

[¶1.]        Nicholas and Donnelle Hoffman own real property in Douglas County. The Hoffmans learned that Douglas Luebke applied for and received a building permit for a hog confinement unit from Jessica Van Wyk, the Douglas County Planning and Zoning Administrator. The Hoffmans applied for a writ of mandamus compelling Van Wyk and the Douglas County Planning and Zoning Commission to comply with the County's zoning ordinance and revoke the building permit. The circuit court held a trial and denied the Hoffmans' request. The Hoffmans appeal, and Van Wyk counters with a notice of review. We affirm in part and reverse in part.

## Facts and Procedural History

[¶2.]        Douglas Luebke applied for and received a building permit from Van Wyk, in her capacity as Douglas County Planning and Zoning Administrator, for a hog confinement unit housing up to 2,400 head on July 22, 2015. Luebke submitted an accompanying hand-drawn site plan with his application. The facility was to be located fewer than two miles from the Corsica Lake Recreation Area and under a half mile from the Hoffman residence. Van Wyk made no public notice of her decision to grant Luebke's application, as she determined that the ordinance did not require notice be given. However, Van Wyk informed the Commission that she had issued a permit to Luebke prior to the Commission's meeting on September 10, 2015. On September 11, 2015, the Hoffmans met with Van Wyk at her office, where they discussed the permit granted to Luebke. Van Wyk explained to the Hoffmans

that Luebke's hog barn would house fewer than 1,000 animal units[1] and did not constitute an animal feeding operation under the ordinance. As such, she considered it a permitted use under the zoning ordinance for which a building permit could be granted.

[¶3.]     On December 22, 2015, the Hoffmans' counsel sent a letter to the Douglas County State's Attorney, who then forwarded the letter to Van Wyk. The letter requested that Van Wyk revoke the building permit issued to Luebke. On December 28, 2015, the Commission held an emergency meeting and determined that the building permit should not be revoked. Van Wyk then sent a response letter to the Hoffmans' counsel explaining Van Wyk's decision not to revoke the permit, reiterating the fact that the facility would house fewer than 1,000 animal units under the ordinance. No written notice of appeal was filed after Van Wyk issued the letter.

[¶4.]     On March 14, 2016, the Hoffmans applied for a writ of mandamus to compel Van Wyk and the Commission to revoke the building permit and put a halt to all construction. The circuit court issued an alternative writ of mandamus ordering Van Wyk and the Commission to show cause explaining why the court should not issue a permanent writ of mandamus. On June 3, 2016, the court held a trial. In its memorandum decision, the court held that the facility was not a "farm,"

---

1.     Different animal species are converted under the ordinance into "animal units." For example, a "feeder or slaughter beef animal" is equivalent to one animal unit, while five ducks are equivalent to one animal unit. Thus, for purposes of what constitutes an animal feeding operation, housing 1,000 feeder or slaughter beef animals or 5,000 ducks would make a facility an animal feeding operation.

"ranch," or "orchard," and that it therefore did not fall under any of the permitted uses of land for which a building permit could be granted. Nevertheless, the circuit court concluded that a writ of mandamus could not be used to undo an already completed act. Additionally, it found that principles of equity would not entitle the Hoffmans to relief. Thus, while the court concluded that the "[a]dministrator had a ministerial duty—which it failed to fulfill—to deny Luebke's permit application," it ultimately decided that a writ of mandamus would be inappropriate.

[¶5.] The Hoffmans appeal, contending that the circuit court erred by failing to issue a writ of mandamus. Van Wyk argues in a notice of review that the circuit court erred in determining that the hog barn was not a permitted use under the ordinance. Because we agree with Van Wyk, we reverse the circuit court's conclusion that the hog barn was not a permitted use under the ordinance but affirm its decision not to grant the Hoffmans a writ of mandamus.

## Decision

[¶6.] Van Wyk argues on notice of review that the circuit court erred when it determined that Luebke's hog barn was not a "farm" or "ranch" under the ordinance. We agree that Luebke's hog confinement facility, located in an agricultural district, was a permitted use without the need for a variance or conditional-use permit. This issue is dispositive of the case, and we need not reach the merits of the Hoffmans' arguments.

[¶7.] The parties agree that the facility was not an "agriculture" use under the ordinance's definition of terms. "Agriculture" is defined, in part, as "the raising and/or feeding of [fewer] than five hundred (500) animal units of livestock[.]"

However, Van Wyk contends that the facility is a permitted use as a farm or ranch.

Farms, ranches, and orchards are defined collectively under the ordinance as:

> An area of twenty five (25) acres or more which is used for growing usual farm products, vegetables, fruits, trees, and grain, and for the raising thereon of the usual farm poultry and farm animals such as horses, cattle, hogs, and sheep, and including the necessary accessory uses for raising, treating, and storing products raised on the premises; but excluding an Animal Feeding Operation.

Van Wyk points to evidence introduced at trial demonstrating that Luebke used the land that the facility was built on for growing farm products. Van Wyk argues that this area exceeded the 25-acre requirement detailed in the ordinance, whereas "the [o]rdinance does not specify any specific size requirements other than that there be an 'area' of 25 acres or more used for growing farm products and raising hogs." Further, because the facility houses fewer than 1,000 animal units,[2] Van Wyk observes that it would not constitute an animal-feeding operation.

[¶8.]     "[S]tatutory interpretation and application are questions of law that we review de novo." *Krsnak v. S.D. Dep't of Env't & Nat. Res.*, 2012 S.D. 89, ¶ 8, 824 N.W.2d 429, 433 (quoting *State v. Goulding*, 2011 S.D. 25, ¶ 5, 799 N.W.2d 412, 414). "Zoning ordinances are interpreted according to the rules of statutory construction and any rules of construction included in the ordinances themselves." *Even v. City of Parker*, 1999 S.D. 72, ¶ 8, 597 N.W.2d 670, 673 (quoting *Peters v. Spearfish ETJ Planning Comm'n*, 1997 S.D. 105, ¶ 5, 567 N.W.2d 880, 883). "When interpreting an ordinance, we must assume that the legislative body meant what

---

2.     Under the ordinance, 2,400 head of hogs equal 960 animal units.

the ordinance says and give its words and phrases plain meaning and effect." *Id.* (quoting *Peters*, 1997 S.D. 105, ¶ 5, 567 N.W.2d at 883).

[¶9.] The circuit court pointed to an "absence of testimony or evidence in the Record that Luebke used the land for growing grain or farm products in addition to the proposed use of feeding hogs[.]" However, Van Wyk highlights in her brief the fact that the "Hoffmans did not allege or assert in their Application and Affidavit of Writ of Mandamus that Luebke was not growing farm products on his quarter . . . section; rather, they only claimed violation of the [ordinance] based on purported set-back violations and an inadequate site plan drawing." Additionally, evidence presented at trial does support a finding that Luebke grew farm products on the land. Although the permit described only 10 acres of land, as Van Wyk observes, it is undisputed that Luebke owned the quarter section of land (160 acres) where the facility was built and that such land exceeded the minimum 25 acres for a farm or ranch. Luebke himself testified that he farmed for a living, and aerial photographs introduced at trial clearly show the land surrounding the facility being used for cultivation. While the 10 acres used for the hog barn may not have involved cultivation, it was nonetheless a component of "[a]n area of twenty five . . . acres or more" that involved growing farm products. Thus, the hog barn was a permitted use under the ordinance.

[¶10.] The Hoffmans also argue that the Luebke hog barn is in violation of the restrictions set forth in Article 5, § 515(5) and (6), which provide setback requirements for animal waste facilities. An animal waste facility is defined by the ordinance as "[a] structure designed and constructed to store and/or process animal

waste. Animal waste facilities include but are not limited to: holding basins, lagoons, pits and slurry stores." Section 516, "Animal Feeding Operation Performance Standards," subsection 5 states that "[a]nimal waste facilities shall be located no closer than two (2) miles from . . . the Corsica Lake Recreation Area." Subsection 6 states that "[a]nimal waste facilities comprised of a . . . slurry store . . . shall be located no closer than one half (1/2) mile from any . . . residential dwelling." The Hoffmans note that "Luebke has a manure slurry storage pit under the hog confinement unit," which the Hoffmans contend renders the barn an animal waste facility. The Hoffmans argue that the building, which is located fewer than two miles from the Corsica Lake Recreation Area and under half a mile from the Hoffmans' residence, "violates practically all of the [setback] requirements" for such a facility.

[¶11.] Animal waste facilities here, unlike in *Woodruff v. Board of Commissioners for Hand County*, 2007 S.D. 113, ¶ 9, 741 N.W.2d 746, 748, are "defined separately from an animal feeding operation." Further, we have said that when a zoning ordinance is comprehensive in scope, "the title of [a section] does not determine the scope or application of [the] subsection[.]" *Id.* ¶ 8, 741 N.W.2d at 748. Nevertheless, it is clear that the ordinance treats animal waste facilities as a component of a feeding operation. Subsection 1 states that "Animal Feeding Operations shall submit animal waste management system plans and specifications for review and approval prior to construction[.]" Subsequent subsections refer to "such facilities" and "waste facilities." Given the marked similarity of the language used here to that of the language employed in the ordinance analyzed in *Woodruff*,

there is no reason for us to interpret "animal waste management system" differently than we did there: that is, that "animal waste management system" refers to an "animal waste facility." *Id.* ¶ 10, 741 N.W.2d at 748. This also proves to be a more sensible approach to Article 5 as a whole. "Animal waste facilities" are neither recognized as a principle use or structure under § 503 nor as a conditional use under § 507, whereas "animal feeding operations" are identified under the latter. Animal waste facilities, if viewed as distinct from an animal feeding operation, would thus fall under § 509 as a prohibited use or structure. As such, construction of such a facility—which the builder of an animal-feeding operation *must* submit plans and specifications for—would always require a variance.

[¶12.] Even if the use of the hog barn is permitted, the Hoffmans contend that the application submitted by Luebke did not conform to the ordinance's other requirements. Article 9, § 913, of the ordinance states that an application for a building permit "shall be accompanied by a site plan including but not limited to the following items: drawn to scale, including a north arrow, showing property lines, actual dimensions and shape of the lot to be built upon, the exact sizes and locations on the lot of buildings already existing, if any; and the location and dimensions of the proposed building or alteration." The ordinance refers to a detailed example of a site map as a reference. Section 911 further provides that "[n]o building permit shall be issued by the Zoning Administrator except in conformity with the provisions of this Ordinance unless they received a written order from the Board of Adjustment in the form of an administrative review, conditional use, or variance as provided by this Ordinance." The Hoffmans argue in their brief that "Luebke's

application was most certainly not the specific and detailed specimen contemplated by the ordinances and clearly did not comply with the mandatory requirements of the ordinances." The Hoffmans point to the hand-drawn site plan penned by Luebke, noting that it was "not detailed" or drawn "to scale," and the Hoffmans list a litany of other deficiencies contained therein. The Hoffmans further observe that Van Wyk never received a written order from the Board of Adjustment directing her to otherwise issue the building permit.

[¶13.] Van Wyk observes that the application included a site plan "which was drawn to approximate scale, identified the location of the facility on [Luebke's] property, and included a north arrow to show direction." Van Wyk contends that it is within the zoning administrator's discretion to determine whether these details were sufficient. Van Wyk also highlights the fact that Luebke testified that he would have submitted a more detailed drawing had it been requested. Nevertheless, even if the Hoffmans are correct that the site plan did not meet the requirements set out by the ordinance and that "[Van Wyk] had no discretion as to what information could be left out of the application process," such argument is ultimately beside the point. As Van Wyk notes, construction of the facility had already been completed at the time of trial. Issuing a writ of mandamus to revoke the permit now would thus be ineffective, and we have stated that "[m]andamus will not be granted when it would be unavailing." *Willoughby v. Grim*, 1998 S.D. 68, ¶ 12, 581 N.W.2d 165, 169.

[¶14.] The Hoffmans' relief, if any, lies in enforcing the zoning ordinance so that Luebke does not make an impermissible use of the facility. However, given our

above analysis, it is clear that the facility was a permitted use under the ordinance as part of a farm or ranch.  As such, we reverse insofar as the circuit court concluded that the building permit should not have been issued but affirm its decision denying the Hoffmans a writ of mandamus.

[¶15.]		GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.