#28173-r-DG
**2017 S.D. 87**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CROELL REDI-MIX, INC.,                                   Appellee,
an Iowa Corporation,


          v.


PENNINGTON COUNTY BOARD
OF COMMISSIONERS and MARK
DISANTO, LLOYD LACROIX, DEB
HADCOCK, GEORGE FEREBEE and
RON BUSKERUD, in their capacity
as members of the Pennington
County Board of Commissioners,                           Appellants.


* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE MATTHEW M. BROWN
Judge
* * * *

THOMAS E. BRADY of
Lynn, Jackson, Shultz
  & Lebrun, PC
Spearfish, South Dakota                        Attorneys for appellee.

DONALD P. KNUDSEN of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                       Attorneys for appellants.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2017
OPINION FILED **12/13/17**

#28173

GILBERTSON, Chief Justice

[¶1.] The Pennington County Planning Director approved a construction permit for Croell Redi-Mix Inc. to continue using and expand an existing mining operation. The Pennington County Board of Commissioners reversed. The circuit court reversed the Board's decision and ordered the Board to reinstate the permit. The Board appeals, arguing the issuance of the permit violates Pennington County's zoning ordinances. We reverse the circuit court's decision.

## Facts and Procedural History

[¶2.] Croell Redi-Mix Inc. owns and operates Perli Quarry, which is a mining operation that extracts sand, gravel, and construction aggregate in Pennington County. The process of mining these materials involves drilling, blasting, excavating, hauling, crushing, and washing aggregate as well as stockpiling, loading, selling, and hauling finished product to customers. This 40-acre mining operation is located adjacent to U.S. Highway 16, south of Rapid City. Perli Quarry has been in operation since the 1970s, but Croell acquired the business in 2015, intending to expand the operation.

[¶3.] At the time Perli Quarry began operating in the 1970s, Pennington County had not yet adopted zoning ordinances.[1] The County first adopted temporary zoning controls in February 1994. It subsequently adopted a comprehensive plan and zoning ordinances in January 1996. Those ordinances have been amended and updated at various times, including in 2001 and 2010.

---

1. Pennington County unsuccessfully attempted to pass its first set of zoning ordinances in 1970. This Court invalidated those ordinances in *Pennington County v. Moore*, 525 N.W.2d 257, 260 (S.D. 1994).

-1-

Under these ordinances, the area that includes Perli Quarry is designated an "A-1 General Agriculture District," which is defined in Pennington County Zoning Ordinance (PCZO) § 205. According to § 205(A), "[t]he intent of the A-1 General Agriculture District is to provide a district that will support and encourage agriculture." Under § 205(B),

> [a]ll agricultural uses shall be allowed in the A-1 General Agriculture District, including, but not limited to, the following:
>
> . . . .
>
> 13. Temporary quarries.
>
> . . . .
>
> 16. Drilling for oil or natural gas or the extraction of sand, gravel, or minerals, provided that a Construction Permit is obtained in accordance with these Zoning Ordinances.
>
> 17. Mining provided a Construction Permit is obtained in accordance with these Zoning Ordinances.

The issuance of a construction permit is governed by § 507(A). Construction permits are good for one year and may be extended for an additional year. Alternatively, mining may also be authorized by way of a mining permit under § 507(B).

[¶4.] In November 2015, Croell consulted with staff from the Pennington County Planning Department regarding Croell's intent to continue and expand mining operations at Perli Quarry. The Department advised Croell to obtain a construction permit pursuant to PCZO § 507(A). Croell submitted an application for a construction permit to continue and expand its operation. On February 8, 2016, the Planning Department issued a 10-page report recommending that a construction permit be issued to Croell with 11 conditions. The Pennington County Planning Commission reviewed the report the same day and approved the

application.  The Pennington County Planning Director issued a memorandum approving the permit, numbered CP 15-17, subject to the recommended conditions.

[¶5.] On February 10, 2016, the Pennington County Board of Commissioners received a letter signed by 37 area residents purporting to appeal the Planning Director's approval of CP 15-17.  Croell challenged the letter's authors' standing to appeal, but the Board of Commissioners held a special meeting to discuss the issue on March 2, 2016.  At the meeting, opponents of CP 15-17 expressed concerns regarding the impact of the quarry's expansion on dust, traffic, availability of groundwater, runoff, and depreciation of property values.  Planning Department staff informed the Board of Commissioners that its decision should be limited to considering only erosion and storm-water-control issues.  After several hours of testimony, the Board of Commissioners continued the hearing until April 5, 2016, when it held a second hearing.  At the second hearing, Deputy State's Attorney Jay Alderman informed the Board that historically, Pennington County did not require a mine in operation prior to the 2001 amendment of the PCZO to obtain a mining permit.

[¶6.] By a four-to-one vote, the Board of Commissioners reversed the Planning Director's approval of CP 15-17.  Pursuant to SDCL chapter 7-8, Croell filed an appeal with the circuit court.  On appeal, the court concluded the area residents who sent the appeal letter did not have standing to appeal the Director's decision.  The court also disagreed with the Board's interpretation of PCZO §§ 205 and 507.  Finally, the court held that the Board's decision was arbitrary.  On December 27, 2016, the court issued a one-page memorandum opinion that reversed

the Board's decision and remanded the matter back to the Board with instructions to affirm the Director's issuance of CP 15-17. The court issued findings of fact and conclusions of law on February 15, 2017.

[¶7.]     The Board of Commissioners appeals, raising the following issues:

1. Whether the Board should have entertained the appeal from the Planning Commission.

2. Whether Croell's proposed use of land in an A-1 General Agriculture District could be authorized under a construction permit.

3. Whether the Board's decision was arbitrary.

**Analysis and Decision**

[¶8.]     ***1.    Whether the Board should have entertained the appeal from the Planning Commission.***

[¶9.]     The parties first disagree on whether the Board of Commissioners should have entertained the appeal from the Planning Commission in the first place. Croell contends, as the circuit court concluded, that the individuals who appealed the Planning Commission's decision did not have standing to appeal under PCZO § 507(A)(7)(f), which states: "Any action taken by the Planning Director in administering or enforcing Section 507(A) may be reviewed by the Pennington County Board of Commissioners upon the request of any person affected by such action."[2] Like the court, Croell reasons that because § 507(A) addresses "Erosion

_____

2.    Croell also contends the Board has not appealed the circuit court's conclusion that "Croell's Construction Permit was not subject to appeal[.]" But as the Board points out, Croell's claim is based on a single sentence in the court's one-page memorandum opinion that immediately precedes the conclusion that there was no standing to appeal the Planning Commission's decision. After reviewing the court's findings of fact and conclusions of law, it appears the court's statement that there was no standing is the premise for

(continued . . . )

and Storm Water Control," § 507(A)(7)(f) permits an appeal only by those affected in some way by erosion and storm water. The Board responds that § 507(A)(7)(f) does not govern the right to appeal in this case and that judicial standing requirements are generally inapplicable.

[¶10.]    The plain language of PCZO § 507(A)(7)(f) indicates that it does apply in this case. As indicated above, § 507(A)(7)(f) applies to "[a]*ny* action taken . . . in administering *or* enforcing Section 507(A)[.]" (Emphasis added.) In this context, the word *administer* means "[t]o give or apply in a formal way[.]" *The American Heritage College Dictionary* 17 (3d ed. 1997). Thus, § 507(A)(7)(f) applies whenever the Planning Director acts under § 507(A). The construction permit at issue in this case resulted from the Planning Director's application of § 507(A)—specifically, § 507(A)(3). Therefore, this case involves an action taken in administering § 507(A), and § 507(A)(7)(f) governs the appeal.

[¶11.]    For the same reasons, however, Croell's contention that there was no standing to challenge the Planning Director's decision is incorrect. While PCZO § 507(A) is titled "Erosion and Storm Water Control," the right to appeal under § 507(A)(7)(f) extends to anyone "*affected*" by "*any* action taken by the Planning Director in administering . . . Section 507(A)[.]" (Emphasis added.) Noticeably absent from § 507(A)(7)(f) is any language limiting the right to appeal to matters involving erosion and storm-water control. Thus, § 507(A)(7)(f) provides a right to appeal any action taken by the Planning Director under § 507(A). In this case, the

_____

(. . . continued)
    concluding the issuance of the permit was not subject to appeal. Therefore, these issues are one and the same.

action challenged is the Director's issuance of a construction permit—i.e., the Director's administering of § 507(A)(3).

[¶12.] The question, then, is whether the individuals who appealed to the Board were "affected" by the Planning Director's decision to issue the construction permit. The word *affect* broadly means "[t]o have an influence on or effect a change in[.]" *The American Heritage College Dictionary* 22 (3d ed. 1997). The Board heard testimony and viewed presentations offered by numerous opponents of the permit. These opponents included neighboring landowners who claim the existing mining operations already negatively impact the enjoyment of their properties. According to testimony, the mining operations contaminate local wells, eject large amounts of dust onto neighboring properties, and decrease traffic safety.[3] Several area businesses also opposed the permit, anticipating a reduction in local tourism. Considering the broad definition of the word *affect*, PCZO § 507(A)(7)(f)'s requirements were met in this case.

[¶13.] Even so, Croell contends "the appellants failed to show concrete, particularized, and actual injury that was specifically and personally directed at them[.]" To support this argument, Croell cites to *Cable v. Union County Board of County Commissioners*, 2009 S.D. 59, 769 N.W.2d 817. In that case, this Court applied judicial standing requirements to an appeal brought under SDCL chapter 7-8, which permits an appeal "[f]rom all decisions of the board of county commissioners . . . by any person aggrieved" by such decision. SDCL 7-8-27. The Court held that a person is not aggrieved within the meaning of SDCL 7-8-27

---

3. The quarry exits directly onto U.S. Highway 16.

absent a showing of injury in fact, causation, and the likelihood of effective redress. *Cable*, 2009 S.D. 59, ¶ 21, 769 N.W.2d at 825-26.

[¶14.] Croell's reliance on *Cable* is misplaced. The wording of the appeal provision in *Cable* is substantially narrower than that at issue here. The right to appeal under SDCL 7-8-27 is limited to those persons *aggrieved* by the decision of a board of commissioners, whereas the right to appeal under PCZO § 507(A)(7)(f) applies to all who are *affected* by the Planning Director's administering of § 507(A). More importantly, *Cable* involved an appeal from an administrative body into the circuit court, which is usually limited to reviewing cases and controversies. *See State v. Kvasnicka*, 2013 S.D. 25, ¶ 23, 829 N.W.2d 123, 129. In the present case, the level of appeal at issue was from one administrative body to another—from the Planning Director to the Board of Commissioners—and did not involve the judicial branch. Croell has not cited any authority establishing that the Board's power to review the Director's decision was subject to the same case-or-controversy limitation.

[¶15.] The right to appeal the Planning Director's decision to approve CP 15-17 is governed by PCZO § 507(A)(7)(f). The individuals who appealed to the Board of Commissioners were or would be affected by the Director's decision. Croell has not established that any more-stringent standing requirements apply. Therefore, the Board properly entertained the appeal from the Director's decision, and the circuit court erred in concluding otherwise.

[¶16.]    ***2.    Whether Croell's proposed use of land in an A-1 General Agriculture District could be authorized under a construction permit.***

[¶17.]    Croell argues its intended use of the property is a permitted use under PCZO § 205(B). Specifically, Croell contends its intended use is permitted under § 205(B)(13), which permits "[t]emporary quarries"; § 205(B)(16), which permits "the extraction of sand, gravel, or minerals"; and § 205(B)(17), which permits "[m]ining[.]" Croell further contends that even if its intended use is not a permitted use, it is a legal, nonconforming use. The Board argues that under the plain language of the PCZO, a construction permit may not be issued for a quarry of the scope and duration intended by Croell. The Board further contends that the Planning Commission's interpretation of the PCZO should not override the plain language of the applicable ordinances.

[¶18.]    Even if Croell's intended use would normally be permitted under PCZO § 205(B), § 507 expressly prohibits the Board from issuing a construction permit authorizing the mining proposed by Croell. According to § 507(A)(1)(b), "[t]he requirements of Section 507(A) should be considered minimum requirements, and where any provision of Section 507(A) imposes restrictions different from those imposed by any . . . other provision of law, whichever provisions are more restrictive . . . *shall be considered to take precedence.*" (Emphasis added.) Under § 507(B), "[n]o extraction of any mineral or substance exceeding 100 cubic yards from the earth shall be conducted without a Mining Permit issued by the Commission." This language is unambiguous. Croell does not dispute that it intends to extract more than 100 cubic yards from the earth. Neither does Croell claim its mining operation is related to agriculture. Croell's mining operation is

-8-

simply a commercial enterprise that sells the product it extracts. Therefore, under the clear language of § 507(B), Croell's intended use could not be authorized under a construction permit; a mining permit was required.

[¶19.]     Even so, Croell contends the "historical interpretation, application, and implementation of the [PCZO] by staff and legal counsel is relevant to this appeal." According to Croell,

> the County, including its administrative officials, have historically and consistently interpreted the [PCZO] to allow mining of sand, gravel, and construction aggregate in an A-1 General Agriculture zoning district and to mean that operations existing prior to the addition of Section 507(B) are not required to obtain a mining permit.

Croell bases this argument on Justice Zinter's concurring opinion in *Atkinson v. City of Pierre*, 2005 S.D. 114, 706 N.W.2d 791. In particular, Croell quotes the following:

> Appellate courts are also required to give . . . deference to the City's interpretation [of a municipal ordinance]. For over thirty years, the City has interpreted and applied the 1970 and 1999 ordinances to allow this building, its various additions, and its use. "Courts will consider and give weight to the construction of the ordinance by those administering the ordinance."

*Id.* ¶ 38, 706 N.W.2d at 801-02 (Zinter, J., concurring specially) (footnote omitted) (quoting *Wegner Auto Co. v. Ballard*, 353 N.W.2d 57, 58 (S.D. 1984)).

[¶20.]     Croell's argument omits essential context. The full rule from *Wegner Auto* is as follows:

> [I]n passing on the meaning of a zoning ordinance, the courts will consider and give weight to the construction of the ordinance by those administering the ordinance. However, "an administrative construction is not binding on the court, which is free to overrule the construction if it is deemed to be wrong or erroneous."

*Wegner Auto*, 353 N.W.2d at 58 (citation omitted) (quoting 82 Am. Jur. 2d *Zoning & Planning* § 66 (1976)).[4] The United States Supreme Court has outlined a similar rule for determining when to afford deference to an administrative agency's interpretation of a statute.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984) (footnotes omitted). In light of this Court's opinion in *Wegner Auto*, the same analysis applies here. When the meaning of an ordinance is unambiguous, the contrary interpretation of those administering the ordinance is not entitled to deference. *See id.*; *Wegner Auto*, 353 N.W.2d at 58.

[¶21.]     As explained above, the meaning of PCZO § 507 is unambiguous. Under § 507(B), a construction permit may not authorize the mining or extraction proposed by Croell: "*No* extraction of *any* mineral or substance exceeding 100 cubic

---

4.     The ordinances at issue in *Atkinson* had not been placed into the record, and so this Court was "asked to interpret ordinances that [it could not] read." *Atkinson*, 2005 S.D. 114, ¶ 38, 706 N.W.2d at 802 (Zinter, J., concurring specially). Thus, deference for the city's interpretation of the ordinances was appropriate because there was no basis for concluding that interpretation was erroneous.

yards from the earth shall be conducted *without a Mining Permit* issued by the Commission." (Emphasis added.) Because the plain language of § 507 is unambiguous, the County's contrary interpretation of that ordinance is not entitled to deference.

[¶22.]     Relatedly, Croell contends the mining-permit requirement of the PCZO does not apply to the Perli Quarry because it "has been in operation since the 1970s, long before County adopted its first comprehensive plan and zoning ordinances in 1994, and long before County enacted Section 507(B) in 2001." To support this claim, Croell points to the circuit court's 13th finding of fact: "County explicitly acknowledges that as a result of [*Pennington County v. Moore*, 525 N.W.2d 257 (S.D. 1994)], 'all existing uses, which did not comply with the [PCZO] as adopted in 1994, are considered legal nonconforming uses.'" The Board has not challenged this finding as clearly erroneous. Regardless, this finding is not relevant. Croell's construction-permit application did not simply seek to continue a nonconforming use—Croell sought to expand its operation, converting additional acres of land zoned as an A-1 General Agriculture District to use as a quarry that had not previously been used as a quarry.

[¶23.]     Section 507(B) of the PCZO unambiguously prohibits extracting more than 100 cubic yards of material from the earth without a mining permit. Section 507(A) does not override this prohibition. Because § 507(B) is unambiguous, the Planning Department's interpretation of § 507 is not relevant. Therefore, the Board properly declined to issue a construction permit for the purpose of doing that which

is prohibited under § 507(B), and the circuit court erred by reversing the Board's decision.

[¶24.] **3.** ***Whether the Board's decision was arbitrary.***

[¶25.] Finally, the circuit court held that the Board of Commissioners' decision to reverse the Planning Director's decision was arbitrary and not supported by substantial evidence. In the court's view, the assertions of the area residents were unfounded. Because the court viewed the Board's decision as being premised on those assertions, the court concluded the Board's decision was arbitrary. According to the court, the Board's review "was restricted to storm water runoff and erosion controls." Thus, the court concluded that "[t]he question before the Board was not *if* Croell was to receive a Construction Permit, but rather *what conditions and requirements* were necessary to meet the purpose of the four objectives of Section 507(A)."

[¶26.] There is no reason to apply arbitrariness or substantial-evidence review to the Board's decision. The circuit court's conclusion that the Board's decision was arbitrary is premised on the court's erroneous interpretation of the controlling ordinances. The interpretation of an ordinance is a question of law reviewed de novo, *see Hoffman v. Van Wyk*, 2017 S.D. 48, ¶ 8, 900 N.W.2d 596, 598-99, and the appeal before the court was "heard and determined de novo[,]" SDCL 7-8-30.[5] As explained above, the court's de novo review of PCZO § 507 erroneously

---

5. SDCL 7-8-27 permits an appeal to the circuit court "[f]rom all decisions of the board of county commissioners upon matters properly before it . . . by any person aggrieved[.]" Under SDCL 7-8-30, "[a]ll appeals thus taken to the circuit court . . . shall be heard and determined de novo." As this Court

(continued . . .)

-12-

excludes § 507(B) from consideration despite that section's explicit application to the central issue in this case. Therefore, even if there were a reason to review the Board's decision under the arbitrariness standard, the premise of the court's arbitrariness review is incorrect.

## Conclusion

[¶27.] The Board of Commissioners properly entertained the appeal of the Planning Director's decision to approve CP 15-17. Under § 507(B) of the Pennington County Zoning Ordinance, Croell's intended use of land zoned as A-1 General Agriculture District could not be authorized in the absence of a mining permit. The circuit court's conclusion that the Board acted arbitrarily in denying

---

(. . . continued)

recently explained, however, even "when presented with an appeal of administrative action under a statute prescribing de novo review, . . . [d]e novo review is only appropriate if the administrative action is quasi-judicial." *State, Dep't of Game, Fish & Parks v. Troy Twp.*, 2017 S.D. 50, ¶ 24, 900 N.W.2d 840, 850.

This Court has previously held that "a local zoning board's decision to grant or deny a conditional use permit is quasi-judicial and subject to due process constraints." *Armstrong v. Turner Cty. Bd. of Adj't*, 2009 S.D. 81, ¶ 19, 772 N.W.2d 643, 650-51. A number of other courts have held the same. *See, e.g., Arnel Dev. Co. v. City of Costa Mesa*, 620 P.2d 565, 569 (Cal. 1980) (en banc) ("[Z]oning amendments are legislative, but administrative decisions, such as variances and use permits, are adjudicative."); *Mustang Run Wind Project, LLC v. Osage Cty. Bd. of Adj't*, 387 P.3d 333, 345 (Okla. 2016) ("A board of adjustment deciding an application for a variance or a conditional use does not exercise a legislative power in changing a zoning ordinance, but exercises a quasi-judicial power based upon the facts presented to the board."); *Chioffi v. Winooski Zoning Bd.*, 556 A.2d 103, 106 (Vt. 1989) ("[Z]oning boards, in ruling on applications for special exceptions to a zoning ordinance, perform quasi-judicial functions."). "In the instant case, the Board was performing a quasi-judicial function in determining the applicability of a valid [county] zoning ordinance to the facts of the case, i.e., in applying the law to the facts." *Chioffi*, 556 A.2d at 106. Therefore, de novo review was constitutionally permissible.

the construction permit is premised on an erroneous interpretation of the controlling ordinances. Therefore, the circuit court erred by reversing the Board's decision.

[¶28.]     We reverse.

[¶29.]     ZINTER and SEVERSON, Justices, WILBUR, Retired Justice, and SWANSON, Circuit Court Judge, concur.

[¶30.]     SWANSON, Circuit Court Judge, sitting for KERN, Justice, disqualified.

[¶31.]     JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.