#27935-r-JMK
**2018 S.D. 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KAREN LEE WYMAN,
Personally and as Personal
Representative of the Estate
of Barbara Ann Morris,                                   Plaintiff and Appellant,

     v.

PAMALA BRUCKNER,                                   Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA
\* \* \* \*
THE HONORABLE CARMEN MEANS
Judge

\* \* \* \*

MATTHEW P. BOCK
JAMES A. POWER of
Woods, Fuller, Shultz
 and Smith, PC
Sioux Falls, South Dakota                                   Attorneys for plaintiff and
                                                                                  appellant.


LEE SCHOENBECK
Watertown, South Dakota                                   Attorney for defendant and
                                                                                  appellee.

\* \* \* \*

ARGUED AUGUST 29, 2017
OPINION FILED **02/21/18**

#27935

KERN, Justice

[¶1.]          Karen Wyman is the personal representative of the estate of her deceased mother, Barbara Ann Morris. Wyman alleges that her sister Pamala Bruckner engaged in impermissible self-dealing in her capacity as Morris's attorney-in-fact. Wyman alleges Bruckner improperly wrote checks from an account Bruckner owned jointly with Morris for the benefit of Bruckner and her family. Wyman sued Bruckner on several grounds, including breach of fiduciary duties. The circuit court granted partial summary judgment in favor of Bruckner on that issue. Wyman voluntarily dismissed her remaining claims and appeals from the circuit court's grant of summary judgment. We reverse and remand.

## Facts and Procedural History

[¶2.]          On March 25, 2014, Morris executed an estate plan, which included a will and revocable trust. The will provided that upon Morris's death, her property would pass to the trust, which in turn would be distributed to Wyman and Bruckner per stirpes. When she executed the estate plan, Morris lived with Wyman in Florida. Morris designated Wyman as the personal representative of her estate and the successor trustee of the trust. In the fall of 2014, Morris received a terminal cancer diagnosis and moved from Florida to South Dakota to live with Bruckner.

[¶3.]          Shortly thereafter, Bruckner contacted a South Dakota attorney and directed him to prepare a power of attorney for Morris's signature. The attorney drafted a non-springing durable power of attorney that appointed Bruckner as Morris's attorney-in-fact and mailed it to Bruckner. On October 29, 2014, Morris signed the power of attorney naming Bruckner as attorney-in-fact before a notary.

-1-

The power of attorney is a two-and-a-half-page document of single-spaced text that reads in part:

> Not to limit the full extent of the power and authority herein granted but merely to emphasize certain powers, said attorney-in-fact shall have full, unrestricted, power and authority as follows:
>
> To handle, manage, lease, sell, purchase, convey, exchange, give or receive as a gift, loan, encumber, possess, use, consume, abandon or otherwise deal in or with, in any manner, all or any portion of my real or personal property, including any interest I may have therein, whether now owned or hereafter acquired, whatsoever and wheresoever located . . . .

[¶4.] On November 12, 2014, Morris opened a pay-on-death account at Dakotaland Credit Union. Morris designated Wyman and Bruckner as equal beneficiaries of any money remaining in the account upon her death. But on December 17, 2014, Morris and Bruckner signed an account change authorization form that made Bruckner a joint owner of the Dakotaland account. On March 12, 2015, Morris passed away. Bruckner never deposited any of her personal funds into the Dakotaland account, and all of the funds in the account were deposited by Morris.

[¶5.] Between January 22, 2015, and Morris's death, Bruckner wrote several checks to herself and her family from the Dakotaland account totaling $225,077.16. These included a $200,000 check to Bruckner's husband and two checks Bruckner wrote to herself totaling $6,377.16. After Morris passed away on March 12, 2015, Bruckner wrote one check to her son-in-law for $175 and one to Kuhler Funeral

Home for $5,066.10.[1] On June 24, 2015, Bruckner closed the Dakotaland account and transferred the remaining $29,070.31 to her personal account.

[¶6.] On April 5, 2015, Wyman filed a petition for formal probate of Morris's estate. On September 9, 2015, Wyman brought several claims against Bruckner in a separate civil action, alleging in part that because the power of attorney did not authorize self-dealing, Bruckner breached her fiduciary duties. Bruckner answered that her status as joint owner entitled her to withdraw funds from the account and, in her amended answer, argued that the power of attorney authorized self-dealing. Wyman and Bruckner then filed cross-motions for partial summary judgment on the issue of breach of fiduciary duties and self-dealing and to consolidate the probate and civil actions. Bruckner argued before the circuit court that the power of attorney permitted self-dealing, authorizing her to transfer funds out of the Dakotaland account to herself and to her family members. On May 31, 2016, the circuit court consolidated the actions.

[¶7.] At a June 14 motion hearing, the circuit court ruled that the power of attorney permitted Bruckner to self-deal. Specifically, the circuit court determined that by authorizing Bruckner to "give or receive as a gift" Morris's property whether "now owned or hereafter acquired," the power of attorney permitted Bruckner to self-deal. The court ruled that the power of attorney authorized Bruckner to gift Morris's money to herself as well as to her immediate family, stating: "[M]y thought is that if essentially she could have made a gift to herself that always authorize[s]

---

1. Wyman does not dispute the legitimacy of the payment to Kuhler Funeral Home.

her to give gifts to others, and these people were not just Bruckner's family, they were Morris's family." On June 20, 2016, the court entered a final order denying Wyman's motion and granting partial summary judgment in favor of Bruckner. In its order, the court concluded both that the power of attorney authorized self-dealing of the kind alleged here and that creation of the joint account did not involve an exercise of Bruckner's powers as attorney-in-fact.

[¶8.] Wyman voluntarily dismissed her other claims and appeals the circuit court's decision. Following this Court's request for supplemental briefing, we restate the parties' issues on appeal as follows:

1. Whether Bruckner is judicially estopped from arguing on appeal that her withdrawal of funds from the Dakotaland account was permitted by her status as joint owner of the account rather than as authorized by the power of attorney.

2. Whether Bruckner is barred from arguing on appeal that she was authorized to write checks on the Dakotaland account as a joint owner when she did not raise this argument in her motion for summary judgment below.

3. Whether the power of attorney authorized Bruckner to self-deal.

4. Whether Bruckner acted in a fiduciary capacity with respect to both creating and using the joint account.

**Standard of Review**

[¶9.] "We review a circuit court's entry of summary judgment under the de novo standard of review." *Heitmann v. Am. Family Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508. "We will affirm the trial court's grant . . . of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided." *Estate of Lien v. Pete Lien & Sons, Inc.*,

2007 S.D. 100, ¶ 9, 740 N.W.2d 115, 119. "Cases involving the interpretation of written documents are particularly appropriate for disposition by summary judgment, such interpretation being a legal issue rather than a factual one." *Id.* ¶ 10. "We will affirm a circuit court's decision so long as there is a legal basis to support its decision." *Heitmann*, 2016 S.D. 51, ¶ 8, 883 N.W.2d at 509.

## Analysis and Decision

1. *Whether Bruckner is judicially estopped from arguing on appeal that her withdrawal of funds from the Dakotaland account was permitted by her status as joint owner of the account rather than as authorized by the power of attorney.*

[¶10.]    Wyman contends that Bruckner cannot argue on appeal that her status as joint owner of the Dakotaland account authorized transfers of funds during Morris's lifetime. Wyman claims that the concept of judicial estoppel applies, preventing Bruckner from now asserting a position inconsistent with what she argued below. Bruckner counters that although she maintained a different theory before the circuit court, this Court must affirm summary judgment "if any legal basis exists to support the [circuit] court's decision." *Horne v. Crozier*, 1997 S.D. 65, ¶ 5, 565 N.W.2d 50, 52.

[¶11.]    "The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather it is the intentional assertion of an inconsistent position that perverts the judicial machinery." *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 14, 853 N.W.2d 878, 882. Also known as the "doctrine of preclusion of inconsistent positions" and "doctrine of the conclusiveness of the judgment," *Estoppel*, Black's Law Dictionary (10th ed. 2014), the issue of judicial estoppel may

#27935

be raised "even at the appellate stage" and on a court's "own motion[.]" *Hayes*, 2014 S.D. 64, ¶ 13, 853 N.W.2d at 882.

[¶12.] The question whether to apply principles of judicial estoppel is a mixed question of law and fact, which we review de novo. *Watertown Concrete Prod., Inc. v. Foster ex rel. Estate of Foster*, 2001 S.D. 79, ¶ 11, 630 N.W.2d 108, 112. "Courts have observed that 'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle[.]'" *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001) (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). Generally, for judicial estoppel to apply:

> The later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

*Wilcox v. Vermeulen*, 2010 S.D. 29, ¶ 10, 781 N.W.2d 464, 468. This Court has also said that the "inconsistency must be about a matter of fact, not law." *State v. Hatchett*, 2014 S.D. 13, ¶ 33, 844 N.W.2d 610, 618.

[¶13.] Bruckner argues on appeal that she did not rely on her authority under the power of attorney in dealing with the Dakotaland account. Bruckner claims that she "signed in her own name and right on the Dakotaland account change authorization" form making her a joint owner and authorizing her to write checks on the account. Indeed, Bruckner took this position in both her answer to the complaint and in her amended answer, arguing that she "wrote checks from the joint account, as she was entitled to do as a co-owner of the joint account."

Bruckner emphasizes that "[t]he power of attorney was never utilized for transactions" involving the joint account.

[¶14.] Yet in Bruckner's May 24 cross-motion for partial summary judgment, Bruckner did not argue that her status as joint owner of the account authorized the withdrawals. Rather, Bruckner asserted that "[t]he *Durable Power of Attorney* specifically gave Pamala Bruckner authority to receive gifts from the personal property of her mother, Barbara Ann Morris." Further, Bruckner argued in her brief in support of partial summary judgment that the power of attorney provided clear language authorizing self-dealing, concluding: "*based on the language contained in the Power of Attorney*, the Motion for Summary Judgment should be granted." (Emphasis added.) Bruckner repeated this argument in her June 1 response to Wyman's motion for partial summary judgment and in her June 8 reply brief in support of partial summary judgment.

[¶15.] As Wyman observes, "Bruckner repeatedly . . . maintained that the power of attorney authorized the checks written" (or in some cases, that the "checks should not be considered self-dealing"). However, even if such a position is inconsistent with Bruckner's argument on appeal that she possessed a personal right as joint owner to write checks on the Dakotaland account without exercising her authority as attorney-in-fact, the alleged inconsistency is not one of fact. Rather, Bruckner presents a different legal justification for why she could take the money from the Dakotaland account during Morris's lifetime. Accordingly, judicial estoppel does not bar Bruckner from arguing that her status as joint owner of the Dakotaland account, rather than her authority as attorney-in-fact, authorized the

transfers made during Morris's lifetime. *Hatchett*, 2014 S.D. 13, ¶ 33, 844 N.W.2d at 618.

> 2.  *Whether Bruckner is barred from arguing on appeal that she was authorized to write checks on the Dakotaland account as a joint owner when she did not raise this argument in her motion for summary judgment below.*

[¶16.] Wyman next argues that Bruckner waived the argument that her withdrawals from the joint account did not involve an exercise of Bruckner's powers as attorney-in-fact. "We have consistently held that this Court may not review theories argued for the first time on appeal." *Liebig v. Kirchoff*, 2014 S.D. 53, ¶ 35, 851 N.W.2d 743, 751. This is true even on appeal from summary judgment. *See NattyMac Capital LLC v. Pesek*, 2010 S.D. 51, ¶ 19, 784 N.W.2d 156, 161.

[¶17.] However, Bruckner contends we must affirm the grant of summary judgment if there is any legal basis for affirming the circuit court's decision, *Horne*, 1997 S.D. 65, ¶ 5, 565 N.W.2d at 52, irrespective of whether she argued it below. According to Bruckner, while the circuit court correctly decided that the power of attorney permitted self-dealing, Bruckner's argument on appeal that she did not utilize the power of attorney in withdrawing funds from the joint account "is supported in the record and provides another basis for affirming the [circuit court's] decision." In response, Wyman contends Bruckner made judicial admissions that she relied on her authority as attorney-in-fact to transfer funds, which Wyman argues cannot be contradicted on appeal. Further, Wyman argues Bruckner's status as joint owner would not justify taking money from the Dakotaland account during Morris's lifetime.

[¶18.] Because we hold below that the transfers made during Morris's lifetime violated Bruckner's fiduciary duties irrespective of her status as joint account owner, we need not decide whether Bruckner is barred from arguing on appeal that she was authorized to write checks as an owner of the account.

3. *Whether the power of attorney authorized Bruckner to self-deal.*

[¶19.] Wyman contends that because the power of attorney did not clearly and unmistakably authorize Bruckner to self-deal, Bruckner violated her fiduciary duties when she transferred $6,377.16 out of the Dakotaland account to herself and $218,700 to family members. Bruckner counters that the power of attorney expressly gave Bruckner unrestricted authority to make gifts to herself and her family members, and that this Court has never required "magic language" permitting self-dealing.

[¶20.] We have resolutely held that "a power of attorney must be strictly construed and strictly pursued." *Bienash v. Moller*, 2006 S.D. 78, ¶ 13, 721 N.W.2d 431, 435. "Only those powers specified in the document are granted to the attorney-in-fact." *Id.* Moreover, "a fiduciary must act with utmost good faith and avoid any act of self-dealing." *Id.* ¶ 14. "In order for self-dealing to be authorized, the instrument creating the fiduciary duty must provide '*clear and unmistakable language*' authorizing self-dealing acts." *Id.* (emphasis added). "Thus, if the power to self-deal is not *specifically articulated* in the power of attorney, that power does not exist." *Id.* (emphasis added).

[¶21.] Here, the power of attorney authorized Bruckner to "give or receive as a gift . . . or otherwise deal in or with, in any manner, all or any portion of my real

or personal property, including any interest I may have therein, whether now owned or hereafter acquired, whatsoever and wheresoever located[.]" Wyman argues that finding authorization to self-deal in the language "receive as a gift" is contrary to our settled law and would set a dangerous precedent. We agree.

[¶22.]     This Court strictly interprets the power of attorney, giving effect only to those powers explicitly provided for. *Bienash*, 2006 S.D. 78, ¶ 13, 721 N.W.2d at 435. We have precluded self-dealing even when the language of a power of attorney might logically entail the ability to self-deal. *Id.* ¶ 15 (held that general grant of power authorizing the attorney-in-fact to do all the things the principal would "personally have the right to do" did not authorize self-dealing); *Studt v. Black Hills Fed. Credit Union*, 2015 S.D. 33, ¶¶ 11-13, 864 N.W.2d 513, 516 (held that power of attorney enabling attorney-in-fact to make gifts to "any person" did not permit self-dealing, even though "any person" is necessarily inclusive of the attorney-in-fact). Bruckner correctly argues that we have never held that a power of attorney must include "magic language" to authorize self-dealing. But the language of this power of attorney provides an even less obvious authorization to self-deal than the language purported to do so in *Bienash* or *Studt*. While a strained reading could support an argument that the power of attorney authorized Bruckner to gift Morris's money to herself, we cannot say there is "clear and unmistakable language" authorizing self-dealing acts. *Bienash*, 2006 S.D. 78, ¶ 14, 721 N.W.2d at 435.

[¶23.]     Wyman also argues that the power of attorney does not authorize Bruckner's transfers to family members. Self-dealing occurs when an agent pits

their personal interests against their obligations to the principal. *See Hein v. Zoss*, 2016 S.D. 73, ¶ 8, 887 N.W.2d 62, 65. Here, Bruckner gifted money from the account to her family while Morris was still alive and the owner of all of the funds in the account. The power of attorney does not clearly authorize transfers of the principal's property to family members. If we allow a fiduciary to "feather his or her own nest," *Bienash*, 2006 S.D. 78, ¶ 19, 721 N.W.2d at 436, then the power to do so must be expressly provided for, *Studt*, 2015 S.D. 33, ¶ 13, 864 N.W.2d at 516. *See also In re Estate of Stevenson*, 2000 S.D. 24, ¶¶ 9-20, 605 N.W.2d 818, 820-23 (held that trustee engaged in impermissible self-dealing by leasing trust land to spouse). The power of attorney authorizes Bruckner to "give" any or all of Morris's property, but the power of attorney does not clearly permit self-dealing either with respect to Bruckner herself or her family members.

[¶24.] With respect to Bruckner's transfers of $6,377.16 to herself, $205,300 to her husband, John Bruckner, and $13,400 to her children and grandchildren, we hold that Bruckner engaged in impermissible self-dealing. These transactions involved Morris's property during her lifetime and directly benefited Bruckner. Given our precedent,[2] "it is apparent, as a matter of law, [that Bruckner] breached [her] fiduciary duty[.]" *Bienash*, 2006 S.D. 78, ¶ 15, 721 N.W.2d at 435 (affirming

---

2. As discussed below, we declined to extend principles of agency and self-dealing to every action taken by an attorney-in-fact in *In re Estate of Bronson*, 2017 S.D. 9, 892 N.W.2d 604. However, that case involved the well-settled and countervailing doctrine of amanuensis, which renders a signature penned by the agent a "direct act of the person by whose direction it was done." *Id.* at ¶ 10, 892 N.W.2d at 608. Thus, it could not be said that the signor acted in "a matter []connected to the agency." *See id.* ¶ 11. Further, the facts of the case at bar cannot be meaningfully distinguished from our precedent in *Bienash* and *Studt*.

summary judgment); *accord Studt*, 2015 S.D. 33, ¶¶ 12-13, 864 N.W.2d at 516

(affirming summary judgment).

[¶25.]    However, a durable power of attorney expires after the principal's

death. SDCL 59-7-1. The question, then, whether Bruckner forfeited her

survivorship rights to the remaining money in the Dakotaland account at the time

of Morris's death ($29,070.81 transferred to Bruckner and $175 given to Bruckner's

son-in-law) turns on whether Bruckner breached her fiduciary duties in becoming a

joint account owner.

> 4.    *Whether Bruckner acted in a fiduciary capacity with*
> *respect to both creating and using the joint account.*

[¶26.]    "The existence of a fiduciary duty and the scope of that duty are

questions of law for the court." *Bienash*, 2006 S.D. 78, ¶ 12, 721 N.W.2d at 434.

However, Bruckner contends that if this Court reverses on the issue whether the

power of attorney permitted self-dealing, then we should remand the matter for a

jury trial. *See Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 37, 652 N.W.2d

756, 772 ("Whether a breach of a fiduciary duty occurred, however, is a question of

fact."). Wyman responds that Bruckner conceded below that she acted in a

fiduciary capacity in dealing with the joint account and that she should be held to

that position, whether under a theory of judicial estoppel, waiver, or because such

statements constituted judicial admissions. Wyman also argues that a fiduciary

must always act in the best interests of the principal and that "an attorney-in-fact

has fiduciary duties whenever he or she participates in a transaction within the

scope of her agency."

[¶27.]    However, in *In re Estate of Bronson*, 2017 S.D. 9, 892 N.W.2d 604, we recently declined to apply principles of agency law to every action taken by an attorney-in-fact. In that case, the principal, Bronson, added his son and attorney-in-fact, Butch, as joint owner to one of his bank accounts. *Id.* ¶ 1, 892 N.W.2d at 606. Butch claimed that Bronson could not sign his own name due to a physical disability, and the parties stipulated that Butch signed Bronson's name on the required bank form. *Id.* ¶ 5, 892 N.W.2d at 607. Following his death, Bronson's daughters brought suit against Butch, alleging in part that signing for Bronson was an act of impermissible self-dealing. *Id.* ¶ 4, 892 N.W.2d at 606. However, the circuit court held that Butch "did not act pursuant to the power of attorney" in signing his father's name. *Id.* ¶ 7, 892 N.W.2d at 607. Rather, Butch served as "a mere instrument or amanuensis" for Bronson. *Id.*

[¶28.]    On appeal, we observed that the parties agreed the power of attorney did not authorize self-dealing. *Id.* ¶ 9. However, we noted that exclusively applying principles of agency and fiduciary law "in a case like this would create an *irrebuttable* presumption that once a power of attorney is granted, every subsequent act of the attorney-in-fact involves a fiduciary duty of that agent—even if it is an act regarding a matter unconnected to the agency." *Id.* ¶ 11, 892 N.W.2d at 608 (emphasis added). This we declined to do. Instead, we explained that "the law will imply such duties only where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other." *Id.* While there is no "invariable rule" for determining whether a fiduciary relationship exists, "there must be not only confidence of the one in the other, but

there must exist a certain inequality, dependence, weakness of age, mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other." *Bienash*, 2006 S.D. 78, ¶ 11, 721 N.W.2d at 434. Because Bronson could handle his own affairs when he went to the bank to add Butch to the account, we concluded that "none of the factors necessary for a fiduciary relationship were present *in this banking transaction.*" *Bronson*, 2017 S.D. 9, ¶ 11, 892 N.W.2d at 609 (emphasis added).

[¶29.]     Bruckner argues that the placement of her name on the account did not trigger her fiduciary duties. Bruckner observes that Morris, not she, changed ownership of the joint account to include her. Moreover, Bruckner argues Morris was competent at the time of the transaction. On the other hand, Wyman observes that unlike *Bronson*, which involved a power of attorney signed years before it was intended to be used, here Morris returned to South Dakota and appointed Bruckner attorney-in-fact only after her cancer diagnosis became terminal.

[¶30.]     Certainly, Bruckner violated her duty to "avoid *any* act of self-dealing that place[d] her personal interest in conflict with her obligations to [Morris]," *In re Estate of Stevenson*, 2000 S.D. 24, ¶ 9, 605 N.W.2d at 821 (emphasis added), when she spent funds from the joint account on herself and her family while Morris was still alive. However, the circuit court must determine whether "[Morris] was independently and competently handling [her] own financial affairs when [she] went to the bank to request the creation of the joint account." *Bronson*, 2017 S.D. 9, ¶ 11, 892 N.W.2d at 609. In support of her position, Bruckner offered two affidavits. In her first affidavit, Bruckner claims that Morris instructed bank personnel to add

Bruckner as a joint account owner. In the second, Bruckner claims that Morris either approved or instructed each of the withdrawals challenged by Wyman. While these affidavits create a dispute of fact, we nevertheless find there is insufficient evidence in the record to determine whether the markers of a fiduciary relationship were present at the time Morris added Bruckner to the Dakotaland account. We remand to the circuit court to make further determinations on this issue and whether a trial is needed with reference to the status of the remaining funds.

[¶31.]    The parties dispute where the funds ought to be returned if the transactions are reversed. Wyman contends Bruckner voided her survivorship rights to the Dakotaland account, either because she made unauthorized transfers during Morris's lifetime or because she engaged in impermissible self-dealing. Further, Wyman observes that because the joint account is now closed, the funds taken during Morris's lifetime should be returned to the estate. Bruckner argues that even if the Dakotaland account's funds were improperly spent during Morris's lifetime, the concept of "tracing" should apply. According to Bruckner, the funds should be distributed according to how they would have been had Bruckner not transferred money out of the Dakotaland account prior to Morris's death—thus, Bruckner would receive the entire amount. In support of her view, Bruckner cites SDCL 29A-6-104 and *McDonough v. Kahle*, 1999 S.D. 14, ¶ 12, 588 N.W.2d 600, 603, where we stated that "an account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights of survivorship to attach to it."

[¶32.]    However, we agree with Wyman that the funds should be returned to the estate.  As noted above, Bruckner's withdrawals involved impermissible self-dealing under the power of attorney.  Moreover, Bruckner fails to cite any authority for why funds from a *closed* account should be traced according to the survivorship rights stemming from said account.  The only case Bruckner points to in support of her proposition, *Johnson-Batchelor v. Hawkins*, 450 N.W.2d 240 (S.D. 1990), is inapposite.

[¶33.]    In *Johnson-Batchelor*, a husband and wife shared a joint savings account and each contributed their own money to the account.  *Id.* at 240-41.  Before his death, the husband took money out of the account to purchase certificates of deposit for his estranged daughter from another marriage.  *Id.* at 241.  Upon his death, the daughter claimed survivorship rights to the CDs.  *Id.*  However, the wife argued she also possessed an interest in the CDs because the husband purchased them with funds from the joint savings account.  *Id.*  We affirmed the circuit court's judgment granting the wife an interest in the CDs in the amount equal to that appropriated by the husband from the wife's contributions to the joint savings account.  *Id.* at 241-42.

[¶34.]    Bruckner contends that *Johnson-Batchelor* "stands for the proposition that you should honor the intent of a joint owner who contributed funds to a joint account."  According to Bruckner, because Morris signed the required form to make Bruckner joint owner of the Dakotaland account, this Court can ascertain where she intended the funds to go.  However, this overstates *Johnson-Batchelor*'s much more limited holding: that an individual has an interest in property purchased with their

money and without their knowledge or consent. Further, *Johnson-Batchelor* involved present interests in an existing CD. As Wyman observes, the account here no longer exists.

## Conclusion

[¶35.] With respect to the money withdrawn from the Dakotaland account during Morris's lifetime, because Bruckner engaged in impermissible self-dealing, we hold that the funds should be returned to the estate and distributed according to Morris's estate plan. However, we remand to the circuit court to determine, using the factors outlined in *Bienash*, 2006 S.D. 78, ¶ 11, 721 N.W.2d at 434, whether Bruckner acted in her fiduciary capacity when she was added to the Dakotaland account. If the court determines Bruckner acted in a fiduciary capacity and breached her duties to Morris, the funds expended after her death should likewise be returned to the estate.

[¶36.] Reversed and remanded.

[¶37.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and CONNOLLY, Circuit Court Judge, concur.

[¶38.] CONNOLLY, Circuit Court Judge, sitting for WILBUR, Retired Justice, disqualified.

[¶39.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted, did not participate.