#30008, #30163-r-SPM
**2024 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

#30008

TAMMY BOHN, JUSTIN BOHN,
and BRENDA VASKNETZ,                                  Petitioners and Appellants,

v.

FAY BUENO, in her capacity as
Finance Officer for the City of Sturgis;
MARK CARSTENSEN, in his capacity
as Mayor for the City of Sturgis; and
MIKE BACHAND, ANGELA WILKERSON,
DAVID MARTINSON, BEKA ZERBST,
JASON ANDERSON, AARON JORDAN,
DEAN SIGMAN, and KEVIN FORRESTER,
in their capacities as Aldermen for the City of
Sturgis,                                              Respondents and Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
#30163

TAMMY BOHN, JUSTIN BOHN,
and BRENDA VASKNETZ,                                  Plaintiffs and Appellants,

v.

CITY OF STURGIS, a South Dakota
Municipal Corporation, and
DANIEL AINSLIEE,                                      Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KEVIN KRULL
Judge

* * * *

ARGUED
MAY 24, 2023
OPINION FILED **02/07/24**

**** 

KELLEN B. WILLERT of
Bennett, Main, Gubbrud
   & Willert, P.C.
Belle Fourche, South Dakota                Attorneys for appellants.


ROBERT B. ANDERSON
DOUGLAS A. ABRAHAM of
May, Adam, Gerdes and Thompson, LLP
Pierre, South Dakota                       Attorneys for appellees #30163.


MARK F. MARSHALL
ERIC C. MILLER of
City of Sturgis
Sturgis, South Dakota                      Attorneys for appellees #30008.

#30008, #30163

MYREN, Justice

[¶1.]    Appellants Tammy Bohn, Justin Bohn, and Brenda Vasknetz (Citizens) applied for a writ of mandamus against several city officials after the finance officer for the City of Sturgis (City) declined to certify their petition to hold an election to remove the position of city manager from the City's government. They sought a writ of mandamus requiring the finance officer to certify their petition and also requiring the city council to schedule and hold an election under their petition. The circuit court denied the writ by granting summary judgment in favor of the City. Citizens appeal. We reverse.

## Factual and Procedural History

[¶2.]    The current municipal government of the City is comprised of a mayor and aldermen. The City also employs a city manager. The voters created the city manager position through a 2007 election that added the position to the City's government.

[¶3.]    Citizens were among a group that circulated petitions in late 2021 seeking to remove the city manager position from the City's government. The petition stated:

> WE THE UNDERSIGNED qualified voters of the municipality of STURGIS, the state of South Dakota, petition, pursuant to SDCL § 9-11-6 and other applicable law, petition that the municipal government of STURGIS be changed as follows and that the proposal be submitted to the voters for their approval or rejection pursuant to SDCL § 9-11-5:
> **The form of government for the municipality of Sturgis should be changed <u>from</u> the current form of municipal government (aldermanic <u>with</u> a city manager form of government) <u>to</u> an aldermanic form of government <u>without</u> a city manager.**

-1-

Like this petition, the election in 2007, which established the city manager position, was also petitioned under SDCL 9-11-6. That statute provides:

> If a petition signed by fifteen percent of the registered voters of any municipality, as determined by the total number of registered voters at the last preceding general election, is presented to the governing body, *requesting that an election be called for the purpose of voting upon a question of change of form of government* or upon a question of the number of wards, commissioners, or trustees, the governing body shall call an election to be held within fifty days from the date of the filing of the petition with the municipal finance officer. At that election, the question of the change of form of government or the number of wards, commissioners, or trustees, or both, must be submitted to the voters. No petition is valid if filed more than six months after the circulation start date declared on the petition forms. If the petition is filed on or after January first prior to the annual municipal election and within sufficient time to comply with the provisions of § 9-13-14, the question may be submitted at that annual municipal election.
> The election must be held upon the same notice and conducted in the same manner as other city elections.

SDCL 9-11-6 (emphasis added).

[¶4.] The petition containing approximately 900 signatures was filed with the city finance officer, Fay Bueno, on December 16, 2021. Instead of proceeding to certify the petition, Bueno consulted with the city attorney and asked him to render a legal opinion on the propriety of the question presented in the petition, namely whether removing a city manager is a change in the "form of government" that could be petitioned under SDCL 9-11-6.

[¶5.] The city attorney prepared a report concluding that Bueno should not schedule an election because the question posed on the petition was improper. The report stated that employing a city manager was not a form of government and

that, under SDCL 9-10-11[1], only the city council could remove a city manager. The report further concluded that "[t]he city council should authorize an action for declaratory judgment in circuit court to determine whether the power to employ a city manager is a form of government."

[¶6.] The City posted a statement on its website on December 28, 2021, stating:

> Based upon a discussion during a Special City Council meeting held on December 28, the City Finance Officer will neither validate nor invalidate petitions to Change Municipal Government.
> On the advice of the Sturgis City Attorney, the Sturgis City Council will ask the City Attorney to file an action for a declaratory judgment from the South Dakota Board of Elections. This is an independent third party that will render an unbiased decision. This action will help clarify the rights of involved parties and will determine if the removal of a City Manager is considered a change in the form of government. The City Council will determine the appropriate next steps based on that decision.

The City Council unanimously approved a resolution on January 3, 2022, directing the mayor to submit a petition to the State Board of Elections (Election Board) "requesting a declaratory judgment as to the propriety of the question submitted on the question."[2]

[¶7.] On January 3, 2022, Citizens applied for a writ of mandamus in circuit court seeking to compel the finance officer to certify that sufficient signatures were

---

1. "The manager shall be appointed for an indefinite term but may be removed by majority vote of the members of the governing body." SDCL 9-10-11.

2. ARSD 5:02:02:01 allows for a petition to the State Board of Elections to issue a declaratory ruling. After receipt of the petition, the Board has thirty days to issue its declaratory ruling. ARSD 5:02:02:02.

submitted on the petition. It also asked the circuit court to require the city council to schedule and carry out an election under SDCL 9-11-6 or 9-10-1. While similar to SDCL 9-11-6 in some respects, SDCL 9-10-1 permits a petition to hold an election on "the proposition of employing a city manager."[3]

[¶8.]       Also on January 3, 2022, the mayor requested a declaratory ruling from the Election Board on the question, "Is a city manager an employee or a form of municipal government within the meaning of SDCL § 9-11-6?" The Election Board requested further information from the mayor about how the petition fell within the jurisdiction of the Election Board. The mayor subsequently withdrew the petition for a declaratory ruling before the Election Board "[b]ecause the referendum sponsors filed an action for mandamus[.]"

---

3.      SDCL 9-10-1 provides in full:

> If a petition signed by fifteen percent of the registered voters of any first or second class municipality as determined by the total number of registered voters at the last preceding general election is presented *requesting that an election be called to vote upon the proposition of employing a city manager*, the governing body shall call an election for that purpose. Upon receipt of a valid petition, the question shall be presented at the next annual municipal election or the next general election, whichever is earlier. However, the governing body may expedite the date of the election by ordering, within ten days of receiving the petition, a special election to be held on a Tuesday not less than thirty days from the date of the order of the governing body.
> The election shall be held upon the same notice and conducted in the same manner as other municipal elections. The vote upon the question of employing a city manager shall be by ballot which conforms to a ballot for statewide question except that the statement required to be printed on the ballot shall be prepared by the municipal attorney.

(Emphasis added.)

[¶9.]      In a January 12, 2022 letter, Bueno informed Citizens that she declined to certify the petition. The letter stated that she had requested an opinion from the city attorney, who advised her that a city manager was not a form of government and that employing a city manager was an administrative decision and, therefore, not subject to referendum.

[¶10.]      The City filed a motion for summary judgment on the writ of mandamus action. Following a hearing, the circuit court issued a memorandum decision and order, noting that the petition sought to change the form of government from aldermanic with a city manager to aldermanic without a city manager. The circuit court cited SDCL 9-2-3[4] and held that the petition sought to do away with the city manager position, but such a change was not in the City's form of government. The circuit court concluded that the petition improperly sought to achieve an outcome that was not possible through a petition for a change in the form of municipal government. The circuit court granted summary judgment in favor of the City and dismissed the case. The grant of summary judgment effectively denied the application for a writ of mandamus.

[¶11.]      Citizens now appeal, asking this Court to issue "a writ of mandamus ordering Bueno to certify the Petition, present the Petition to the Sturgis Council, and for the Sturgis Council to schedule an election." Alternatively, they assert that the circuit court erred in denying their motion to limit the scope of the City's arguments and that it erred in granting summary judgment.

---

4.      "Each municipality shall be governed by a board of trustees, a mayor and common council, or by a board of commissioners. A city manager may serve with any of the forms of government." SDCL 9-2-3.

## Standard of Review

[¶12.]     The circuit court granted summary judgment in favor of the City.[5]

"We review a circuit court's entry of summary judgment under the de novo standard

of review." *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 14, 980 N.W.2d 217,

222 (quoting *Wyman v. Bruckner*, 2018 S.D. 17, ¶ 9, 908 N.W.2d 170, 174).  "We will

affirm a circuit court's 'grant of a motion for summary judgment when no genuine

issues of material fact exist, and the legal questions have been correctly decided.'"

*Id.* (quoting *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697,

700).  Underlying questions of statutory interpretation and application in the

mandamus action "are questions of law that we review de novo." *Krsnak v. S.D.*

*Dep't of Env't and Nat. Res.*, 2012 S.D. 89, ¶ 8, 824 N.W.2d 429, 433 (quoting *State*

*v. Goulding*, 2011 S.D. 25, ¶ 5, 799 N.W.2d 412, 414).

### *Whether the circuit court correctly applied the laws related to mandamus when it granted summary judgment.*

[¶13.]     "A writ of mandamus is an extraordinary remedy that will issue only

when the duty to act is clear." *Id.* ¶ 9, 824 N.W.2d at 434 (quoting *Woodruff v. Bd.*

*of Comm'rs for Hand Cnty.*, 2007 S.D. 113, ¶ 3, 741 N.W.2d 746, 747).  "A writ of

---

5.     Citizens assert that summary judgment was not an available remedy to
       dispose of the writ of mandamus.  Summary judgment is available for "[a]
       party against whom a claim, counterclaim, or cross-claim is asserted or a
       declaratory judgment is sought[.]"  SDCL 15-6-56(b).  "[S]ummary judgment
       is appropriate to dispose of legal, not factual questions." *Trapp v. Madera*
       *Pacific, Inc.*, 390 N.W.2d 558, 562 (S.D. 1986).  A writ of mandamus presents
       the legal question about whether someone has a clear legal duty to act.
       Therefore, summary judgment can be appropriate. *See also Williams v.*
       *Sundstrom*, 385 P.3d 789, 793 (Wyo. 2016) ("Summary judgment is available
       in a mandamus action."); *Newman Signs, Inc. v. Hjelle*, 300 N.W.2d 860, 863
       (N.D. 1980) (granting summary judgment in a writ of mandamus action).

mandamus 'commands the fulfillment of an existing legal duty, but creates no duty itself, and' does not act 'upon . . . doubtful or unsettled law.'" *Id.* (omission in original) (quoting *Woodruff,* 2007 S.D. 113, ¶ 3, 741 N.W.2d at 747). "To prevail on a writ of mandamus or prohibition, Petitioners must show 'a clear legal right to performance of the specific duty sought to be compelled and the [respondent] must have a definite legal obligation to perform that duty.'" *Id.* (alteration in original) (quoting *Cheyenne River Sioux Tribe v. Davis,* 2012 S.D. 69, ¶ 13, 822 N.W.2d 62, 66). "The writ of mandamus must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." SDCL 21-29-2.

[¶14.] The circuit court's decision is premised on its conclusion that Citizens' petition could not be submitted to the voters because it did not seek a change in the form of government. The court further held that the petition "improperly seeks to achieve an outcome that is not possible, whether by initiative, referendum, or other means" and was therefore invalid. However, before addressing whether these conclusions were erroneous, we must first address whether the finance officer had the authority to evaluate the purpose of a petition when completing her statutory duties concerning petitions of this type. Thus, we must ascertain the finance officer's statutory duties for certifying a petition of the kind submitted in this case. Mandamus will only compel the completion of clear duties.

[¶15.] Citizens contend Bueno's duty is defined by SDCL 9-20-4, which provides:

> When a *petition to initiate* is filed with the finance officer, the finance officer shall present the petition to the governing body at its first ensuing regular or special meeting. The governing body

> shall submit the petition to a vote of the voters in the manner prescribed for a referendum.

(Emphasis added.)

[¶16.] "In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." *Reck v. S.D. Bd. of Pardons and Paroles*, 2019 S.D. 42, ¶ 11, 932 N.W.2d 135, 139 (quoting *State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166). "[I]f the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction." *Id.* (alteration in original) (quoting *State v. Bariteau*, 2016 S.D. 57, ¶ 15, 884 N.W.2d 169, 175). "The intent of a statute is determined from what the Legislature said, rather than what we think it should have said." *Id.* (quoting *Engesser v. Young*, 2014 S.D. 81, ¶ 22 n.1, 856 N.W.2d 471, 478 n.1).

[¶17.] Registered voters of a municipality may initiate ordinances and resolutions by submitting a petition "signed by at least five percent of the registered voters in the municipality." SDCL 9-20-1. SDCL 9-20-4 defines a finance officer's duty when voters submit a petition proposing such an initiative. This case does not involve an initiative petition; consequently, SDCL 9-20-4 is inapplicable. Instead, given the nature of the petition submitted by Citizens, we conclude the finance officer's duties in this context are defined elsewhere. SDCL 12-1-9 directs that the "State Board of Elections shall promulgate rules, pursuant to chapter 1-26, concerning . . . (6) The procedure to accept a petition and verify petition signatures[.]" Under that authority, the Election Board has promulgated ARSD 5:02:08:00, which provides:

> When a petition is presented for filing, the person or governing board authorized to accept the petition shall determine if it meets the following requirements:
> (1) The petition is in the form required by this chapter;
> (2) The petition contains the minimum number of valid signatures . . .
> (3) Each sheet of the petition contains an identical heading and is verified by the circulator. . . .

In the circumstances presented in this case, the city finance officer is the person authorized to accept the petition, so it was her duty to follow the regulation. This regulation imposes the duty on the finance officer to make three determinations: whether the petition is in the "form required by this chapter," whether it contains the necessary signatures, and whether each sheet of the petition contains the identical header and is properly verified.

[¶18.]    This case requires us to address the question of the scope and nature of the finance officer's duty to ensure that any petition is in the "form required by this chapter." Chapter 5:02:08 provides specific forms related to the types of petitions regularly used by voters.[6] Chapter 5:02:08 does not contain any form of a petition regarding the authorization or deauthorization for a city to use a city manager, but it does contain a form for a petition to change the form of government. *See* ARSD 5:02:08:23. The 2007 petition that the Sturgis voters approved to authorize the City to employ a city manager used this form to accomplish a change in the form of municipal government. In their efforts to have the voters reverse the outcome of the 2007 election, Citizens submitted their petition using the same form. When

---

6.    The forms for a municipal initiative petition and a municipal referendum petition are found in ARSD 5:02:08:15 and ARSD 5:02:08:16, respectively, and are different from the form for a change in the form of municipal government found in ARSD 5:02:08:23.

performing her duties as defined by ARSD 5:02:08:00.03, which specifies the components that must be included on all petitions prescribed in Chapter 5:02:08 (including "instructions to signers, signature blanks, and verification"), the finance officer had a clear duty to compare the petition submitted with the form provided in the ARSD. Performance of that clear duty could lead to no other conclusion but that the petition was in the "form required by this chapter."

[¶19.] The City contends the finance officer also had the authority to inquire into the subject matter of the petition to determine whether it was a legally permissible subject for the vote of citizens. However, the finance officer has no such authority under this State's statutory or decisional laws.

[¶20.] The role of the finance officer, as outlined in the administrative rules, is focused on the petition's format and the counting of valid signatures. Significantly, her role under ARSD 5:02:08:00 is identical regardless of what type of petition is submitted. This further suggests that she has no mandate to examine whether the subject matter in the petition is proper for the particular form being used. When a petition is in a form authorized by regulations, contains the minimum number of valid signatures, and each sheet of the petition has an identical heading and is verified by the circulator, the finance officer has a clear duty to certify the petition and present it to the city council.

[¶21.] The petition submitted by Citizens was in a form authorized by the regulations. There are no allegations of deficiencies in the heading, verification, or number of signatures. Consequently, Bueno had a clear duty to act under the regulation to certify the petition and present it to the city council.

[¶22.]     Once a "petition signed by fifteen percent of the registered voters . . . is *presented* requesting that an election be called to vote upon the proposition of employing a city manager, the governing body shall call an election for that purpose." SDCL 9-10-1 (emphasis added). Based on a plain reading of the statute, the city council's duty to call an election is triggered if (1) they receive a petition signed by fifteen percent of the registered voters and (2) the petition requests an election on the proposition of employing a city manager.

[¶23.]     This case presents a unique procedural posture. Because the city finance officer declined to certify the petition, it was not presented to the city council in the manner anticipated by the statutory scheme. Nevertheless, this petition was considered by the city council as if it had been presented, as evidenced by their discussion of the matter at a special city council meeting that resulted in directing the finance officer to neither validate nor invalidate the petition. It is equally evident that the city council misperceived its clear duty under the statute.

[¶24.]     Neither the finance officer nor the city council had the authority to delay the scheduling of an election to vote on the submitted petition. Their attempts to do so were premised on their mistaken belief that SDCL 9-10-1 does not allow citizens to request an election on whether the City should no longer utilize a city manager. Instead, they contend that a city manager can only be removed under SDCL 9-10-11.

[¶25.]     SDCL 9-10-11 specifies that a city's governing body possesses the authority to remove a person appointed as the city manager. It does not restrict the citizens' ability to petition for an election on the issue of whether the city should

utilize a city manager. Instead, SDCL 9-10-1, which authorizes an election to consider "the proposition of employing a city manager," encompasses elections to add and remove the *city manager position.* This statutory use of the phrase "proposition of employing a city manager" is noteworthy. With it, the Legislature has not restricted the petition question to relate solely to employing a city manager initially. The "proposition of employing a city manager" is broader and could fairly relate to a decision by the voters to revert to *not* employing a city manager.

[¶26.] While the petition here stated it was brought under SDCL 9-11-6, the statute governing petitions proposing a change in the form of government, it is clear that the petitioners' intent was to hold an election on the question of removing the city manager position. A person signing the petition would understand that the petition was seeking to eliminate the city manager position from the City's government. Such a petition is statutorily authorized under SDCL 9-10-1. The same was true of the 2007 petition.

[¶27.] SDCL 2-1-11 requires petitions to be "liberally construed, so that the real intention of the petitioners may not be defeated by a mere technicality." Although this provision applies only to Chapter 2-1 governing petitions for initiatives and referendums, the principle of liberal construction should be used here as well. *See Sorenson v. Rickman,* 486 N.W.2d 259, 262 (S.D. 1992) (determining that the election contest statutes were the proper way to challenge an election and stating in the context of a challenge to an election after the vote that "when the will of the voters can be ascertained, courts should uphold the will of the voters."). The petition circulated by Citizens was the same as previously used in the

2007 election to create the city manager position. There is no indication that an individual signing the petition would not understand that the real intention of the petitioners was to hold an election to remove the city manager position despite the citation of the incorrect statute.

[¶28.]     That is not to say that the corresponding elections for a change in the form of government and the question of employing a city manager are interchangeable, as there are procedural differences governing elections under SDCL 9-11-6 and 9-10-1.[7]  In this case, the petitioners intended to call an election on whether to eliminate the city manager position. Although the petition cited "SDCL § 9-11-6 and other applicable law," the type of election intended was authorized under SDCL 9-10-1. Consequently, the election must be held using the process and timing requirements identified in SDCL 9-10-1.

[¶29.]     Because a petition to remove the city manager position was presented to the city council, and the petition requested an election on the proposition of employing a city manager, the city council had a clear duty to schedule an election. We remand to the circuit court to enter a writ of mandamus directing the city council to schedule and hold an election consistent with SDCL 9-10-1 as presented in the petition.[8]

---

7.     For example, under SDCL 9-11-6, the election must be held within fifty days from the filing date of the petition or at the annual municipal election if filed after January 1. An election for employment of a city manager under SDCL 9-10-1 is to be held at "the next annual municipal election or the next general election, whichever is earlier."

8.     The City contends that removing the position of city manager could potentially violate the due process rights of the individual occupying the

(continued . . .)

[¶30.]     Our resolution of the preceding issues renders moot the other issues raised by the parties. This decision also renders moot the issues raised in the quo warranto action submitted to this Court in the consolidated appeal #30163, Bohn v. City of Sturgis.

***Attorney Fees***

[¶31.]     Finally, Citizens have requested costs and attorney fees in this case and the associated appeal of Bohn v. City of Sturgis. They seek attorney fees for both appeals and the fees incurred at the circuit court in both actions. They base their claim on SDCL 15-26A-87.3 and SDCL 15-17-51.

[¶32.]     SDCL 15-26A-87.3 authorizes the recovery of appellate attorney fees "*in actions where such fees may be allowable[.]*" (Emphasis added.) Citizens have not cited any authority that would have allowed them to recover their attorney fees in the circuit court. Therefore, they are not entitled to appellate attorney fees under SDCL 15-26A-87.3.

[¶33.]     SDCL 15-17-51 authorizes recovery of reasonable attorney fees for actions that are "frivolous or brought for malicious purposes[.]" The defenses the City and its various officers presented in these cases were not "frivolous or brought for malicious purposes." Citizens are not entitled to the attorney fees they have requested. However, as the prevailing party, they are entitled to costs under SDCL 15-30-6.

---

(. . . continued)
    office. The potential liability and any other repercussions from the
    elimination of the office of city manager are all matters that may be
    considered by the voters when casting their votes.

-14-

[¶34.]     JENSEN, Chief Justice, and KERN and SALTER, Justices, concur.

[¶35.]     DEVANEY, Justice, concurs specially.

DEVANEY, Justice (concurring specially).

[¶36.]     I agree that the circuit court erred in denying Citizens the mandamus relief they requested, namely the scheduling and holding of an election on their petition pursuant to the applicable laws. However, I write specially to address the circuit court's erroneous determination that it is not possible for Citizens to propose, via a petition to change the City's form of government, to "do away with the position of city manager." In so holding, the court focused solely on the language of SDCL 9-2-3, which states: "Each municipality shall be governed by a board of trustees, a mayor and common council, or by a board of commissioners. A city manager may serve with any of the forms of government." Although the court acknowledged that each form of government referenced in the statute may or may not include a city manager, the court concluded that doing away with the city manager position would not change a city's form of government. I disagree with this overly narrow interpretation of SDCL 9-2-3.

[¶37.]     When SDCL 9-2-3 is considered *in pari materia* with the statutes in other chapters of Title 9 that more specifically set forth the structure and composition of municipal governance, it is apparent that the forms of government identified in Title 9 depend on the presence or absence of a city manager. For example, SDCL 9-9-1 directs that "the board of commissioners" in a commission-governed municipality without a city manager, "shall consist of the mayor and two or four commissioners elected at large." But if the voters authorize the employment

-15-

of a city manager in a commission-governed municipality, SDCL 9-10-5 requires that there be nine commissioners, and SDCL 9-10-6 states that within sixty days after an election directing the employment of a city manager, a special election shall be called and held to elect the nine commissioners. Also, the duties and powers of the mayor differ depending on whether a city utilizes a city manager. In the aldermanic-governed municipality without a city manager (the form of governance proposed by the petition here), the mayor does not vote unless there is a tie among the aldermen, and the mayor has the power to veto ordinances and resolutions passed by the council. SDCL 9-8-3. However, if there is a city manager, the mayor has the same powers and duties as an alderman at large and has no right of veto. SDCL 9-10-7. Additionally, some of the powers and duties of the mayor are delegated to the city manager when an aldermanic-governed municipality includes a city manager. *Compare* SDCL 9-8-3 (the mayor ensures "that the laws and ordinances are faithfully executed[,]" keeps the council apprised of affairs of the municipality, and recommends measures for its consideration), *with* SDCL 9-10-15 (vesting these powers and duties with the city manager). Notably, SDCL 9-10-18 provides that statutes governing municipalities that are inconsistent with those in chapter 9-10 are "inapplicable to municipalities employing a city manager."

[¶38.] Because the manner in which a city government is structured and operates is unquestionably dependent on whether or not the city employs a city manager, it is hard to conceive how a decision to remove a city manager position would not effect a change in the form of government. Thus, contrary to the circuit court's view, a petition seeking to change the City's form of governance from

aldermanic with a city manager to aldermanic without a city manager necessarily seeks to change the City's form of government. Further, although I do not believe SDCL 9-2-3 is ambiguous, if the placement of the reference to a city manager in a separate sentence is deemed to create an ambiguity when interpreting this statute, a review of legislative history further supports that governance with a city manager and governance without a city manager are distinct forms of government.

[¶39.] Prior to 2000, SDCL 9-2-3 stated that third class municipalities shall be governed by boards of trustees. This statement was followed by a separate sentence stating that "[f]irst and second class municipalities shall be governed either by a mayor and common council, or by a board of commissioners, *in each case with or without a city manager*." SDCL 9-2-3 (1999) (emphasis added). The statute did not contain the phrase "form of government[,]" and thus, it is apparent that the use or non-use of a city manager describes different types of governance. In fact, prior to 2000, SDCL 9-11-5 used the phrase "form of government" and included as a form of government "the city manager plan."[9]

---

9. The 1999 version of SDCL 9-11-5 provided:

> The voters of any first or second class municipality may change its form of government from the aldermanic to the commission or from the commission to the aldermanic, or may change the number of its commission, or change its form of government from the city manager plan to the aldermanic or commission plan, or any form of the aldermanic or aldermanic manager plan to any form of the commission or commission manager plan and vice versa by a majority vote of all electors voting at an election called and held as hereinafter provided. Municipalities under special charter may in like manner adopt any of the forms of government as hereinabove provided.

[¶40.]     The amendments to SDCL 9-2-3 in 2000 eliminated the references to the different classes of municipalities and then restructured the two sentences. What was the first sentence was combined with the second, and the reference to a city manager serving with any of the other entities was then set off as a separate sentence which referred to the identified options as "forms of government." The amendments to SDCL 9-11-5 likewise eliminated the references to the different classes of municipalities and deleted the description of various forms of government, while leaving the phrase "form of government." However, nothing in the changes to either statute altered the underlying recognition that the utilization of a city manager is a form of government. Indeed, this Court has recognized the same. *See Kolda v. City of Yankton*, 2014 S.D. 60, ¶ 14, 852 N.W.2d 425, 429 (referring to a "*city-manager form of government* rather than an aldermanic form of government" (emphasis added)).

[¶41.]     But regardless of whether, as a matter of semantics, the decision to employ or not to employ a city manager is deemed to be a "change in the form of government," I agree with the majority opinion that there is no question that citizens of a municipality have a statutory right to have a say in this matter. SDCL 9-10-1 makes this clear.[10] However, because the Board of Elections has not

---

10.    I disagree with the City's view that because SDCL 9-10-11 states that a duly appointed manager may be removed by a majority vote of the governing body and includes a process that must occur beforehand, Citizens are somehow precluded from proposing that the City no longer employ a city manager. It is apparent when reading SDCL 9-10-11, particularly in conjunction with SDCL 9-10-12, which speaks to whom the governing body may designate as a replacement during the suspension of the existing manager, that these

(continued . . .)

developed a separate petition form under ARSD 5:02:08:00 relating to the proposition of employing a city manager despite the fact that SDCL 9-10-1 authorizes such a petition, there was nothing inappropriate with Citizens using the most applicable available form, i.e., the one found under ARSD 5:02:08:23 relating to changes in the form of government. Thus, in my view, there is no need to "liberally construe" the petition here under SDCL 2-1-11, as the majority opinion suggests, to reach the conclusion that the finance officer should have determined it was in the proper form.

[¶42.]    As to the next step—the question of what the finance officer's duties are after verifying that a petition is in the proper form—I do not agree with the majority opinion's conclusion that SDCL 9-20-4 has no application. This statute governs what the finance officer must do when a "petition to initiate is filed" with this officer. The majority opinion cites SDCL 9-20-1, which acknowledges that the registered voters may propose ordinances and resolutions via an initiative petition, but then concludes, without further explanation, that this case does not involve an initiative petition. The terms "ordinance" and "resolution" are defined in SDCL 9-19-1. In my view, Citizens' petition fits within the broad definition of "resolution[,]" which includes "any . . . direction of the governing body of a municipality of a special or temporary character for the purpose of . . . effecting, or carrying out its administrative duties and functions under the laws and ordinances governing the

_____

(. . . continued)
        statutes are referring to the removal of a particular person, not the position itself.

municipality[,]" because the removal of the city manager position would no doubt affect how the City's administrative duties and functions are carried out.

[¶43.] Ironically, despite the majority opinion's conclusion that SDCL 9-20-4 is not applicable, it ultimately concludes that the finance officer must then do what SDCL 9-20-4 directs—present the petition to the city council. Yet the administrative rules under ARSD 5:02:08:00, which the majority opinion suggests are the only applicable rules governing the duties of the finance officer, relate only to what the finance officer must *verify* upon receipt of a petition. The administrative rules do not address what the finance officer must do after verifying a petition, nor do SDCL 9-10-1 or SDCL 9-11-6. Rather, these statutes only address what the *governing body* must do once it receives the petition from the finance officer. Notably, SDCL 9-20-4 is the only statute directing what *the finance officer* must do after verifying a petition under the administrative rules (i.e., present it to the governing body) and, importantly, *when* it must be done (i.e., at the governing body's first ensuing regular or special meeting).

[¶44.] As to what must happen after the petition is presented to the governing body, I agree that the other provisions in Title 9 that relate more specifically to the type of petition at issue must be applied. *See Citibank, N.A. v. South Dakota Dep't of Rev.*, 2015 S.D. 67, ¶ 21, 868 N.W.2d 381, 391 (applying our well-established rule in which the more specific statute controls over more general statutes). Therefore, I agree with remanding the matter for the circuit court to enter a writ of mandamus directing the City Council to call an election in accord with the provisions in SDCL 9-10-1.